UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT MAININI, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ELLIOTT GOROG *ET AL.*,<br><br>    Defendants. | Case No. 4:25-cv-05381 |

**PLAINTIFF'S MOTION FOR EXPEDITED PRE-ANSWER DISCOVERY TO IDENTIFY DOE DEFENDANTS PURSUANT TO FED. R. CIV. P. 26(d)(1)**

### I. INTRODUCTION

At least between October 2023 and August 2024, Health Matching Account Services, Inc. made systematic daily transfers of $27,000 to $50,000 from its customer accounts—totaling approximately $11.7 million—to known and unknown entities, trusts, and related parties. On October 22, 2025, the United States District Court for the Western District of Missouri froze HMA's source accounts in a parallel enforcement action. *See United States v. Health Matching Account Services, Inc.*, Case No. 4:25-cv-00814-RK, Doc. 5 (W.D. Mo. Oct. 22, 2025). However, that Temporary Restraining Order does not reach the destination accounts or the entities that received the $11.7 million during those ten months before the government's intervention.

Plaintiff seeks limited pre-answer discovery to identify transferees. Without this discovery, Plaintiff cannot serve these Doe defendants to recover the $11.7 million for the approximately 9,000 Class members.

This motion is unopposed by Regina Gorog. Regina Gorog and Plaintiff have agreed to stay all party-to-party discovery from Defendants—including both the deadline to answer the Complaint (February 19, 2026) and all other party discovery—until July 1, 2026, to accommodate the parallel Missouri action and the government's ongoing criminal

investigation. This party discovery stay does not prevent Plaintiff from conducting the limited non-party discovery from financial institutions requested herein to identify Doe defendants.

**Timing.** Plaintiff filed this Complaint on November 15, 2025—over two months ago. This motion is filed on January 21, 2026, and Defendants do not have to answer until February 19, 2026, over three months after the Complaint was filed. During this period, the $11.7 million already transferred to unknown parties remains at risk of dissipation.

## II.   FACTUAL BACKGROUND

### A.   The Complaint's Allegations and Timing

The Complaint filed November 15, 2025 alleges that HMA operated an admitted Ponzi scheme that defrauded over 9,000 customers nationwide. (Complaint ¶¶ 1-8). HMA promised to match customer contributions dollar-for-dollar and maintain accessible accounts for medical expenses, but these promises were false. (Id. ¶¶ 12, 31-53).

HMA officer Elliott Gorog admitted in a December 9, 2023 text: "It's my Ponzi scheme I can do what I want lol." (Id. ¶ 50). Financial records confirm HMA held only $130,609 against obligations of $33 million on October 1, 2023—a 99.6% shortfall. (Id. ¶¶ 4-5, 54-61).

Former HMA employee Hollie Shelton state in August 2025 that she observed daily transfers of $27,000 to $50,000 from HMA's accounts: "I would see it like every single day, you know, it'd be like $50,000 from a payout for health matching account, services to this bank account. You know, $27,000.40 $46,000 like these are daily transactions." (Id. ¶ 99). These transfers flowed from HMA's PlainsCapital Bank account ending in 8956 through Stripe payment processors to destination accounts, totaling approximately $11.7 million over 335 days. (Id. ¶¶ 98-104).

The Complaint alleges these transfers went to unknown entities including trusts, related-party LLCs, and other parties who facilitated or benefited from the fraud. (*Id*. ¶¶ 8, 28, 110).

Only the financial institutions that processed these transfers possess records identifying the recipients.

### B. The Parallel Criminal Action and Preliminary Injunction

On October 22, 2025, the United States filed a civil enforcement action and obtained a Temporary Restraining Order finding that defendants operated "fraudulent healthcare savings plan-like programs" and would "dissipate, alienate, and conceal the proceeds of the fraudulent scheme" absent emergency relief. *United States v. HMAS*, Case No. 4:25-cv-00814-RK, Doc. 5 at 1-2 (W.D. Mo. Oct. 22, 2025). The TRO freezes HMA's PlainsCapital accounts (including account ending in 8956) and Stripe accounts (including accounts ending in vejH, rp2t, and UYzw). *Id*. at 2.

On January 13, 2026, the parties in the Missouri civil action filed a joint motion seeking entry of a preliminary injunction, adjournment of the preliminary injunction hearing, and a six-month stay until July 13, 2026, of defendants' deadline to answer and the issuance of a scheduling order. *United States v. HMAS*, Case No. 4:25-cv-00814-RK, Doc. 23 (W.D. Mo. Jan. 13, 2026). The joint motion states that "the parties submit that such a stay serves the interests of justice and judicial economy" given "the government's ongoing criminal investigation." *Id*. at 2-3.

### C. The Critical Gap: Destination Accounts Remain Unprotected

The TRO only freezes HMA's source accounts—not the destination accounts where the $11.7 million went. The systematic daily transfers occurred between October 2023 and August 2024, before the government's October 2025 intervention. Those funds left HMA's accounts (now frozen) and were deposited into accounts held by unknown entities, trusts, and related parties (not frozen).

The TRO's asset freeze applies only to "Defendants, their agents . . . officers, and employees, and all other persons or entities in active concert or participating with Defendants." *Id.* It does not bind the unknown transferees who are not parties to the Missouri action.

The millions sitting in destination accounts remains unprotected and subject to continued dissipation. Elliott Gorog and/or Regina Gorog likely transferred customer funds to trusts they control, related-party entities, and other parties who are not subject to the government's TRO. These transferees can continue accessing and dissipating those funds unless this Court acts to identify them so Plaintiff can pursue fraudulent transfer claims under Texas law.

### III. LEGAL STANDARD

#### A. Fifth Circuit Good-Cause Framework

Rule 26(d)(1) provides that a party may not seek discovery from any source prior to the parties' Rule 26(f) planning conference except when authorized by the rules, by agreement of the parties, or by court order. Fed. R. Civ. P. 26(d)(1). The Fifth Circuit has not adopted a standard for determining whether expedited discovery is warranted, but district courts within the circuit have applied the "good cause" standard. S*ee Elargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La. 2016); s*ee also Mary Kay Inc. v. Beyou-Cosmetics storefront on www.eBay.com* No. 3:21-cv-1074-B, 2021 WL 2315097, at *1–2 (N.D.Tex. June 7, 2021) (noting that majority of courts in this circuit have applied the "good cause" standard) (citing Elargo , 318 F.R.D. at 61); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, In*c. , 344 F.Supp.2d 986, 991 (S.D.Tex. 2004) (a party seeking discovery prior to the parties' Rule 26(f) conference has the burden of showing good cause) (citing Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure , § 2046.1 (2d ed. 1998)). Under the good cause standard, as applied in this circuit, courts consider five factors: "'(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the

requests; and (5) how far in advance of the typical discovery process the request was made.'" *Pizza Hut LLC v. Pandya*, No. 4:19-CV-00726-RWS, 2019 WL 8331437, at *1 (E.D.Tex. Nov. 26, 2019) (*quoting Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 3382806, at *1 (E.D. Tex. July 21, 2017) (collecting cases).

### B. Asset-Tracing Discovery from Financial Institutions

Courts routinely authorize bank subpoenas to trace fraudulently transferred assets where asset dissipation threatens effective judgment. *Signal Capital Corp. v. Frank*, 164 F.R.D. 7 (S.D.N.Y. 1995) (authorizing bank subpoenas where rapid asset changes threatened to moot relief); *A. Farber & Partners Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006) (holding plaintiff's need for defendant's financial documents outweighs defendant's claim of privacy, especially when the impact of the disclosure of the information can be protected by a carefully drafted protective order).

More recently, Judge Hittner authorized narrowly tailored bank records in a wire-fraud case, finding specificity and limited temporal scope sufficient to override privacy objections. *Cothran v. Koomson*, No. 4:20-cv-00481 (E.D. Tex. Nov 3, 2020). Similarly, in cryptocurrency fraud cases involving asset dissipation, courts have authorized expedited compliance deadlines for payment processor subpoenas. *Miller v. Sophia*, No. 1:25-cv-00035 (E.D. Tex. Feb. 25, 2025) (seven-day deadline).

### IV. ARGUMENT

### A. Prima Facie Case: Ponzi Scheme Establishes Fraudulent Intent as Matter of Law

The Complaint alleges fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act against all transferees, including Doe defendants. HMA made $11.7 million in systematic transfers while holding less than 4% of its obligations. (Complaint ¶¶ 202-208).

Under controlling Fifth Circuit precedent, "proving that [a transferor] operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made" as a matter of law. *Janvey*

*v. Alguire*, 647 F.3d 585 (5th Cir. 2010). This eliminates any need to plead separate badges of fraud. The Fifth Circuit reiterated this rule in *Ralph Janvey v. Tonya Dokken*, 767 F.3d 430 (5th Cir. 2014), confirming that once Ponzi status is shown, the burden shifts to the transferee to prove a TUFTA defense.

Elliott Gorog's December 9, 2023 admission that HMA was "my Ponzi scheme" establishes the actual-intent element of TUFTA § 24.005(a)(1) as a matter of law under *Janvey.* (Complaint ¶ 50). The federal court's October 22, 2025 TRO independently confirms HMA operated a "fraudulent" scheme sufficient to justify emergency injunctive relief. *United States v. HMAS*, Doc. 5 at 1-2. These are facially plausible claims that satisfy the prima facie case requirement.

**B. Specific, Narrowly Tailored Discovery**

Plaintiff seeks from Stripe, PlainsCapital Bank, and Wells Fargo for October 1, 2021 through August 31, 2025:

1. Transaction records showing all transfers from HMA's accounts, identifying: date, amount, destination account number, account holder name and address, and destination financial institution.

2. Communications between HMA and the financial institutions regarding the transfers, suspicious activity reports, or account management.

This request targets the period when systematic transfers occurred and seeks only information necessary to identify and serve the transferees. *Ebates, Inc. v. Does 1-211*, No. 4:16-cv-01925 (N.D. Cal. May 3, 2016) approved subpoenas for identifying information while explicitly excluding phone numbers and billing information as unnecessary. The narrow scope mirrors the discovery authorized in *Venice PI, LLC v. Does 1-16*, No. 4:17-cv-02244 (S.D. Tex. Aug. 23, 2017), where this Court approved subpoenas to AT&T limited to names and current addresses only.

### C. No Alternative Means to Obtain Information

Federal banking privacy laws prohibit voluntary disclosure but expressly permit disclosure in response to court-ordered subpoenas. The Right to Financial Privacy Act provides that financial institutions may disclose records "if the financial records are disclosed in response to a lawful subpoena." 12 U.S.C. § 3402(5). The Gramm-Leach-Bliley Act similarly "permits a financial institution to disclose non-public personal information … to respond to judicial process." 15 U.S.C. § 6802(e)(8).

### D. Adverse Parties Will Not Voluntarily Disclose

HMA's officers—Regina Gorog, Elliott Gorog—are adverse defendants who will not disclose transferees holding recoverable assets. A former HMAS employee confirmed transfers occurred but didn't have access to destination account information. The government's TRO requires defendants to identify their accounts within ten days (*United States v. HMAS*, Doc. 5 at 3), but this does not cover the sea of related entities and other individuals associated with HMA. Only the financial institutions that processed these transfers possess the information necessary to identify the Doe defendants.

### E. Central Need for Discovery and Irreparable Harm from Delay

Without identifying transferees, Plaintiff cannot serve them or pursue TUFTA claims to recover the $11.7 million. Tex. Bus. & Com. Code § 24.008(a)(3)(A). As this Court recognized in *Venice PI,* a plaintiff cannot pursue its claims without learning the defendants' identities. 2017 WL 3671831, at *3.

The urgency is acute. The government's TRO froze HMA's source accounts on October 22, 2025, but the $11.7 million already transferred to unknown entities, trusts, and related parties between October 2023 and August 2024 remains outside the TRO's reach. Judge Ketchmark found defendants would "dissipate, alienate, and conceal the proceeds of the fraudulent

scheme" (*United States v. HMAS*, Doc. 5 at 2)—but that finding applies only to assets still under defendants' control.

Regina and Elliott Gorog likely transferred funds to:

- Trusts they control as trustees and beneficiaries (Regina Kathryn Gorog Trust, Elliott Clifford Gorog Trust, Garland Levit 2011 Irrevocable Trust, Donald N. Levit 2010 Descendants Trust);

- Related-party entities (Investments of Mother and Son, LLC; Think Wellness Now, Inc.; Health Maintenance Plus Agency, Inc.; Agents Commission Advance Association, LLC);

- Other professional advisors and entities who structured or facilitated the fraud.

None of these transferees are parties to the government's action. They can continue accessing and dissipating the $11.7 million unless identified and served.

As courts have recognized in similar fraud cases involving rapid asset dissipation, expedited discovery is necessary because "any privacy interest is outweighed by the need to trace stolen assets" and every day's delay increases the likelihood the funds will vanish. *Harris v. Upwintrade.com*, No. 1:24-cv-00313 (E.D. Tex. Aug. 8, 2024); *Miller v. Sophia*, No. 1:25-cv-00035 (E.D. Tex. Feb. 25, 2025). TUFTA's four-year statute of limitations is already running on the earliest October 2023 transfers.

### F. Privacy Adequately Protected by Safeguards

Recipients of $27,000-$50,000 commercial transfers from a fraudulent Ponzi scheme have minimal privacy interests. The government's TRO confirms these were proceeds of a "fraudulent scheme." Courts recognize that commercial transactions have no legitimate expectation of privacy because they are voluntarily conveyed to banks and exposed to bank employees in the ordinary course of business. *Securities and Exchange Commission v. W Financial Group LLC*, No. 3:08-cv-00499 (N.D. Tex. Mar 9, 2009).

As the court held in *A. Farber & Partners Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006), plaintiff's need for defendant's financial documents outweighs defendant's claim of privacy, especially when the impact of the disclosure of the information can be protected by a 'carefully drafted' protective order. Similarly, in *Cothran v. Koomson*, No. 4:20-cv-00481 (E.D. Tex. Nov 3, 2020), the court found that "specificity and limited temporal scope" of bank record requests sufficed to override privacy objections in fraud cases.

V.     CONCLUSION

The government's TRO halts ongoing fraud but doesn't reach the millions already transferred to unknown entities between October 2021 and August 2025. Those funds—likely sitting in accounts held by trusts, related-party LLCs, and other transferees not subject to the TRO—remain at risk of dissipation.

Plaintiff satisfies all requirements established by Columbia Insurance, Venice PI, and Fifth Circuit precedent:

- **Prima facie case:** Elliott Gorog's admission establishes Ponzi scheme status, which under *Janvey v. Alguire* and *Janvey v. Dokken* proves fraudulent intent as a matter of law. The government's TRO independently confirms the fraud.

- **Specific discovery:** Narrowly tailored to HMA bank records from October 2021 and August 2025 showing the disposition of funds.

- **No alternatives:** Federal statutes prohibit voluntary disclosure and permit only court-ordered subpoenas. Adverse parties will not disclose.

- **Central need:** Plaintiff cannot pursue all of his claims without learning the defendants' identities.

Only by identifying transferees through the requested discovery can Plaintiff pursue TUFTA claims to recover these assets for 9,000 defrauded customers. As courts have recognized when confronting similar asset-dissipation threats, "every day's delay increases the

likelihood" the funds "will vanish." *Harris v. Upwintrade.c*om, No. 1:24-cv-00313 (E.D. Tex. Aug. 8, 2024); *Miller v. Sophia*, No. 1:25-cv-00035 (E.D. Tex. Feb. 25, 2025).

WHEREFORE, Plaintiff respectfully requests that this Court: (1) Grant this Motion for Expedited Pre-Answer Discovery; (2) Authorize Plaintiff to serve Rule 45 subpoenas on Stripe, Inc., PlainsCapital Bank, and Wells Fargo Bank, N.A. for the limited October 1, 2023 through August 31, 2025 time period and Grant such other and further relief as the Court deems just and proper.

Dated: January 27, 2026                                    Respectfully submitted,

*/s/ Alexander Loftus*

ALEXANDER LOFTUS, Esq.
SDTX Federal No. 3663102
LOFTUS & EISENBERG, LTD.
181 W. Madison, Suite 4700
Chicago, Illinois 60601
Ph: 312.899.6625
alex@loftusandeisenberg.com
- and -

JAMES CREWSE, Esq.
Texas Bar No. 24045722
CREWSE LAW FIRM, PLLC
5919 Vanderbilt Ave.
Dallas, Texas 75206
Ph: 214.394.2856
jcrewse@crewselawfirm.com

ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS

## RULE 7.1 COMPLIANCE STATEMENT

Pursuant to Local Rule 7.1, counsel for Plaintiff conferred with counsel for Regina Gorog regarding this motion. Counsel for Regina Gorog does not oppose this motion for expedited pre-answer discovery.

Counsel for Plaintiff did not receive assent from counsel for Elliott Gorog to this motion.