# Exhibit A

### *Mainini* Fraud–Based Allegations Raised by the *Pope* Plaintiffs in *Pope*[1]

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| 11/22/2024 | Dkt. 1 | <ul><li>Using a Primary Holder Contract, HMA allegedly sold a health matching account promising to match consumer contributions. Dkt. 1 at ¶¶ 5, 16-25.</li><li>HMA breached those contracts. *Id.* ¶¶ 98–105.</li><li>**The match was "phantom,"** and HMA never added money to client accounts. *Id.* ¶ 45.</li><li>HMA allegedly promised debit card access as a contractual inducement and then discontinued the feature. *Id.* ¶¶ 6, 17, 23, 25, 31–33, 36, 38–40, 49–50, 67.</li><li>**HMA systematically failed to pay valid medical claims while deducting funds from client accounts**. *Id.* ¶¶ 51–60.</li><li>Clients who stopped paying monthly fees forfeited their account balances. *Id.* ¶¶ 4, 6, 24, 37, 64–65, 67</li><li>**The scheme was masterminded and perpetrated by HMA principals Regina and Elliott Gorog**. *Id.* ¶¶ 2, 34, 45.</li></ul> |
| 10/28/2025 | Dkt. 61 | <ul><li>"The evidence establishes that **HMA operated as what its principals called a 'Ponzi scheme,' systematically stealing customer funds through fraudulent practices**." Dkt. 61 at 2.</li></ul> |
| 10/28/2025 | Dkt. 61-1 | <ul><li>"**Elliot Gorog called it what it was: 'my Ponzi scheme**.'" Dkt. 61-1 at 6.</li><li>"Introduction: **The Emergency Arises From a Massive Healthcare Fraud and FBI Raid**." *Id.*</li></ul> |

---

[1] This exhibit cites to PDF pages and supplies emphasis.

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "**This emergency motion arises from the catastrophic collapse of Health Matching Account Services, Inc. ('HMA'), a healthcare account administrator that defrauded thousands of customers** nationwide before being raided by he FBI on October 23, 2025." *Id.*<br><br>• "The procedural history leading to **this motion reveals both the scope of the fraud and the urgent need for receivership**." *Id.*<br><br>• "The breakthrough [in discovery] came on June 4, 2025, when ClaimChoice finally produced two pages of explosive text messages between Elliot Gorog (HMA's principal) and Phil Burghardt (ClaimChoice's CEO). **These messages contained devastating admissions, including Gorog's acknowledgment that HMA was operating as 'my Ponzi scheme' and his instructions to 'pocket the savings' from customer accounts**." *Id.* at 7.<br><br>• "**Ms. Shelton provided detailed statements confirming that the matching funds promised to customers 'technically doesn't exist' and were merely 'phantom' numbers** in a computer system. **She revealed that customer accounts were 'slush accounts' with no segregated funds and that she was instructed to lie** to customers about claim status." *Id.* at 7–8.<br><br>• "Armed with this new evidence, [the *Pope*] **Plaintiffs shared their proposed Amended Complaint with Defendants in early September 2025, adding detailed fraud claims based on the text message admissions and Shelton's statement. The amended complaint documented how Gorog admitted to operating a 'Ponzi scheme,' instructing staff to 'stiff the hospital,' and bragged about throwing 'at least 30 claims in the trash.'"** *Id.* at 8.<br><br>• "**Concealment is ongoing** as records remain hidden in FBI custody." *Id.* at 10. |

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|------|----------------------|-------------------------------------|
|      |                      | <ul><li>"**The Fraudulent Scheme: Defendants' Own Words Condemn Them**." *Id.* at 12.</li><li>"**This case presents something extraordinary: defendants who documented their own crimes. Elliot Gorog didn't just commit fraud—he bragged about it in writing. Elliot Gorog confessed: 'It's my Ponzi scheme** I can do what I want lol we actually caught a Donzi scheme in loving memory of Don Call it the donzi scheme.' . . . This isn't an accusation—it's admission. **Gorog celebrated destroying legitimate claims**: 'I'm almost done with the audit I promised Mommy last Friday, which was a MUST. I tossed at least 30 claims in the trash.' . . . **He bragged about reducing payments by 77%**: 'Before phil my claims were 30k a day now they are 7k lol.' . . . **He instructed staff to defraud providers**: 'stiff the hospital and wipe out the HMA account balances!! LOL . . . .' Defendants promised to match customer contributions dollar-for-dollar. **Hollie Shelton exposed the lie**: 'the money in their account technically doesn't exist. It's just a number on your account. There's no money actually associated with your specific account.'" *Id.* at 12.</li><li>"**Regina Gorog controlled everything**. Shelton explained: When Regina came in, if Regina felt like it, then they would make a check run. . . . Elliot described his mother's approach: 'I'm trying to tell Griselda a.k.a. my mom it's OK mom we don't have to rape and pillage all the time lol.'" *Id.* at 12–13.</li><li>"**Fraud** Plus Active Dissipation Justifies Immediate Control." *Id.* at 13.</li><li>"**The memorandum details Defendants' admissions**, but additional authority coupling **fraud with flight or concealment reinforces the 'imminent danger' showing**." *Id.*</li><li>"Here, **the fraud is admitted** and the dissipation is automatic." *Id.*</li></ul> |

3

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | <ul><li>"The combination of **admitted fraud** and FBI-induced paralysis creates dissipation more severe than any shell game or asset flight." *Id.*</li><li>"The balance overwhelmingly favors receivership. **The benefits include** 10,000 victims regaining healthcare access, $20 million preserved for distribution, **stolen funds recovered through claw-back actions** . . . . **The burdens amount to two confessed criminals losing control** they already forfeited . . . ." *Id.* at 14.</li><li>"Plaintiffs present valid claims supported by **Defendants' written confessions to operating a 'Ponzi scheme,' systematically pocketing customer payments, and destroying legitimate claims**. The probability of fraudulent conduct is not speculative but admitted** and documented through Defendants' own communications and corroborated by witness testimony." *Id.* at 15.</li><li>"**Protecting 10,000 fraud victims vastly exceeds any burden on two admitted criminals**." *Id.* at 16.</li><li>"TRA is frequently engaged by the Department of Justice to act as Receiver in **cases involving fraud prosecutions**." *Id.* at 18.</li><li>"**\*\*Healthcare Sector Experience\*\***: Represented parties in healthcare company bankruptcies including hospitals, doctor groups, and senior housing— understanding the unique challenges of **healthcare-related financial fraud**." *Id.* at 19.</li><li>**\*\*Fraudulent Transfer Litigation\*\***: Managed several related **fraudulent transfer adversary proceedings** on behalf of Chapter 7 trustees . . . ." *Id.*</li><li>"The combination of Mr. Foley's business restructuring expertise and Mr. Banich's receivership litigation experience creates the ideal team to: Coordinate immediately with the FBI to access seized records; process</li></ul> |

4

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|------|----------------------|-------------------------------------|
| | | emergency medical claims; **Pursue fraudulent transfer** and insider recoveries; Maximize restitution for 10,000 victims; Bridge civil and criminal proceedings effectively." *Id.* <br><br> • **"Plaintiff's complaint filed nearly a year ago sought a Receiver and counsel has been working on a plan to clean up HMA since."** *Id.* at 20. <br><br> • "Mr. Banich's representation of SEC receivers in **Ponzi scheme cases** provides the exact blueprint for this receivership." *Id.* <br><br> • "Defendants may argue that the FBI's seizure of records makes receivership superfluous. Courts reject that contention and recognize that coordination between civil receivers and criminal authorities serves both proceedings." *Id.* at 21. <br><br> • "These decisions establish that a court-appointed fiduciary is the natural bridge between this Court and the FBI. The receiver can access seized records while preserving them for prosecution, process victim claims while maintaining evidence integrity, pursue asset recovery while coordinating with criminal forfeiture, and ensure civil restitution complements criminal penalties. Without a receiver, the civil and criminal proceedings will conflict rather than complement each other." *Id.* <br><br> • "**[C]ivil recovery actions for fraud victims—the very relief HMA's customers need**—fall into the category of litigation that 'will be curtailed or postponed.'" *Id.* at 22. <br><br> • "The appointment of a receiver will vest this Court's officer with broad but carefully defined powers essential to protecting **the many victims of HMA's fraud**." *Id.* at 24. <br><br> • "[T]he receiver's litigation authority encompasses **pursuing fraudulent transfer actions to recover diverted funds** . . . . . The receiver may void |

5

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | preferential payments made while the entity was insolvent, **recover funds that Elliot Gorog admitted to 'pocketing' from customer accounts** . . . ." *Id.* at 26.<br><br>• "The complex nature of **HMA's healthcare fraud** necessitates retention of specialized professionals including . . . forensic accountants to trace **fraudulently transferred funds**, . . . and legal counsel experienced in **fraudulent transfer litigation** . . . ." *Id.* at 28.<br><br>• "Litigation powers provide the mechanism to recover **millions that the Gorogs admitted diverting from customer accounts**." *Id.* at 29.<br><br>• "Professional retention brings essential expertise to maximize recovery from a complex **healthcare fraud**." *Id.*<br><br>• "The evidence shows **Defendants confessed to running a Ponzi scheme, documented their 'pocket the savings' fraud, and bragged about throwing claims 'in the trash.'** The FBI confirmed it all by raiding their offices and shutting down operations." *Id.* at 30.<br><br>• "Every *Santibanez* factor supports receivership through **valid claims proven by confession, admitted fraud documented in writing** . . . ." *Id.* |
| 10/28/2025 | Dkt. 61-2 | • "On June 4, 2025, ClaimChoice finally produced two pages of **text messages between Elliot Gorog (HMA's principal)** and Phil Burghardt (ClaimChoice's CEO). **These messages contained explosive admissions**." Dkt. 61-2 at 2.<br><br>• "The messages also showed Gorog explaining a **scheme to charge members account balances the unadjudicated amount and pocket the savings**." *Id.* |

6

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "In August 2025, Holly Shelton, HMA's former employee, contacted our office seeking to expose **HMA's fraudulent practices**." *Id.* at 3.<br>• "Ms. Shelton provided detailed information about HMA's operations, including that **the promised matching funds were 'phantom' and that customer accounts contained no actual segregated funds**." *Id.*<br>• "**Based on Ms. Shelton's information and the ClaimChoice text messages, we drafted an Amended Complaint in September 2025 adding detailed fraud claims**." *Id.*<br>• "**Faced with these fraud allegations supported by their own admissions**, HMA agreed on September 25, 2025 to mediate all claims." *Id.* |
| 10/30/2025 | Dkt. 70 | • "[P]rior to hearing the Department of Justice submitted unsealed documents via email to the Court but were not included in the record the Complaint is attached hereto as Exhibit A and incorporated herein. **The facts alleged resulted in a Temporary Restraining Order are material to whether a Receiver should be appointed**." Dkt. 70 at 1; *see also id.* at 6 (attaching as Exhibit A the Verified Complaint for Injunctive Relief, which the United States filed against HMA and the Gorogs for alleged fraud).<br>• "The *Petters* case provides the template for this Court. **Like HMA, the Petters entities operated a massive Ponzi scheme defrauding thousands of victims. Like HMA's principals, Thomas Petters was subject to parallel criminal prosecution**." *Id.* at 3.<br>• "**Elliot Gorog has confessed in writing to operating 'my Ponzi scheme' and systematically defrauding customers**. The scale of victimization—approximately ten thousand individuals with healthcare savings accounts—**creates precisely the situation *Petters* addressed: . . . substantial** |

7

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • **fraudulent transfers requiring recovery through avoidance litigation**, and parallel criminal proceedings requiring coordination." *Id.* at 4.<br>• "[T]he individuals who previously held those positions have **confessed to operating the entity as a fraudulent scheme**." *Id.*<br>• "This unburdens the Court and enables and [sic] orderly structure to be put in place to take care of the victims rather than just locking the doors or worse yet, letting **the Gorog family continue operating a Ponzi scheme**." *Id.* at 5. |
| 11/04/2025 | Dkt. 74 | • "The government offers . . . no explanation for why the adversarial process that governs every other litigant should not apply when the United States seeks to block relief for **10,000 defrauded victims**." Dkt. 74 at 1.<br>• "The government has made no such showing here because this is not a national security case. **It is a Ponzi scheme involving healthcare fraud**." *Id.* at 4.<br>• "The government identifies no statute that specifically contemplates ex parte submissions in opposition to motions to appoint civil receivers in **civil fraud cases**." *Id.*<br>• "The party seeking that relief—**Plaintiffs representing 10,000 defrauded victims**—would have no opportunity to respond if the Court considers the government's secret submission." *Id.* at 4–5.<br>• "The Department of Justice exists to serve the public interest, not to obstruct civil remedies for defrauded victims. **When 10,000 people have been defrauded out of healthcare funds by a confessed Ponzi scheme operator**, the government should be facilitating victim recovery, not throwing up procedural roadblocks to prevent it." *Id.* at 8. |
| 11/04/2025 | Dkt. 75 | • "The 'specialized professionals' both opponents decry are the only means to . . . recover **tens of millions in fraudulently transferred assets**." Dkt. 75 at 4. |

8

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | <ul><li>"The government's own verified complaint reveals the magnitude: **over $37 million in victim funds have vanished**. . . . By February 2024, over $37 million had disappeared while **Elliott Gorog called it 'my Ponzi scheme,' laughed about victims demanding payment, and used member funds for beachfront condos**." *Id.* at 5.</li><li>"**A confessed Ponzi operator that looted $37 million**, thinks it can beat federal charges, and wants to resume operations demonstrates exactly why a neutral receiver is essential." *Id.*</li><li>"**The government's verified complaint . . . proves catastrophic missing funds**." *Id.* at 6.</li><li>"The government offers no plan to . . . trace **fraudulent transfers** . . . ." *Id.* at 7.</li><li>"Only a receiver [can] **pursue fraudulent transfer actions under TUFTA; recover personal-use expenditures like the Gorogs' beachfront condo; clawback preferential payments to insiders and brokers; investigate HMA's false accounting** . . . ." *Id.*</li><li>"Every day without a receiver means **fraudulent transfer claims move closer to limitations expiration, transferees conceal assets** . . . ." *Id.*</li><li>As Plaintiffs' motion explained, **fraudulent transfer actions are time-sensitive** . . . ." *Id.*</li><li>"**HMA clearly believes it can** defeat or reduce the charges and **resume operation of its Ponzi scheme**." *Id.* at 9.</li><li>"HMA's belief that it can defeat federal charges—**despite Elliott Gorog calling it 'my Ponzi scheme,' despite $37 million missing, despite systematic lies**—demonstrates exactly why a neutral receiver is essential." *Id.*</li></ul> |

9

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "A company that: misappropriated $37 million; reported balances 25-40 times higher than actual funds; used victim money for beachfront condos; systematically lied about sending checks; changed its payment system to conceal fraud; laughed about victims demanding payment; called itself a Ponzi scheme and scam; trapped victims in the 'stickiest product known to man'—cannot be trusted with any operational authority, regardless of whether it beats criminal charges." *Id.*<br><br>• "If HMA successfully defends—through acquittal, hung jury, dismissal, or favorable plea—that would not prove innocence or fitness to manage assets. It would prove only that the government could not satisfy the heightened criminal standard. The receivership standard is much lower: necessity, imminent danger, inadequacy of alternatives. **Even if HMA beats criminal charges, these facts establish overwhelming justification for receivership under civil standards.**" *Id.*<br><br>• "If HMA successfully defends or negotiates favorable resolution, the government's § 1345 freeze dissolves. Assets return to HMA's control. **HMA could resume operations, drain remaining funds, complete destruction of evidence, and leave victims with nothing.**" *Id.* at 10.<br><br>• "Plaintiffs presented unrebutted evidence that: **HMA controls $37 million in missing funds that must be traced; the Missouri TRO has not stopped dissipation or provided victim relief; and only a neutral fiduciary can** trace, marshal, and **safeguard accounts while pursuing fraudulent transfer recoveries**." *Id.* at 12.<br><br>• "**Defendants** [sic] **text message admission and government-verified proof of $37 million missing, and documentary evidence** present the antithesis of Vederra's bare allegations." *Id.* |

10

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | <ul><li>"HMA's accounts demand administration, allocations must be reconciled, **$37 million in fraudulent transfers must be traced**, and forensic accounting cannot be performed while principals remain in control." *Id.* at 13.</li><li>"Federal courts have long recognized that **a pre-judgment receiver may be essential when fraud places assets in peril**." *Id.*</li><li>If ca [sic] receiver is not appointed until judgment, the $37 million will likely never be recovered. By then, **transferees will have concealed assets**, statutes will have run, and trails will be cold." *Id.* at 13–14.</li><li>"Even if fraud were required—which it is not—**the government's verified complaint proves Elliott Gorog confessed to 'my Ponzi scheme' and $37 million vanished**." *Id.* at 14.</li><li>"The government confirms **HMA operated a Ponzi scheme with $37 million missing**." *Id.* at 15.</li><li>"**Elliott Gorog confessed to 'my Ponzi scheme.' Fraud is admitted and proven**." *Id.*</li><li>"The Missouri TRO cannot trace the $37 million, **pursue fraudulent transfers**, reconstruct accounts, process claims, or maintain systems." *Id.*</li><li>"**The Petters Ponzi scheme litigation provides a paradigm**." *Id.* at 16.</li><li>"This nothing novel about what Plaintiff is trying to do. **Plaintiffs are running a play out of the Ponzi Collection Playbook**. This play in Ponzi is as common as running I-Form Off Tackle." *Id.* at 17.</li><li>"**Victims . . . need protection from a confessed Ponzi operator** who believes it can beat federal charges and resume operations." *Id.*</li></ul> |

11

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "Only a neutral receiver can protect victims, trace stolen funds, **prevent HMA from perpetuating fraud**, and coordinate with—but not defer to—criminal proceedings." *Id.* at 18.<br>• "This Court should appoint the proposed receiver immediately with full authority to [recover funds through] **fraudulent transfer litigation**" and pursue "**fraudulent transfer actions against the Gorogs and other transferees**." *Id.* |
| 11/10/2025 | *Mainini* Dkt. 13-1 (*In re Furniss*, No. 25-20526 (5th Cir.), Dkt. 2-2) | • "Approximately **10,000 fraud victims**—locked out of their healthcare accounts . . . ." *Mainini* Dkt. 13-1 at 13–14.<br>• "[T]hat the **fraud victims** were never permitted to hear." *Id.* at 14.<br>• "Yet the government was permitted to defeat **emergency relief sought by defrauded victims** . . . ." *Id.*<br>• "The district court's willingness to entertain this unprecedented procedural irregularity is made more troubling by the government's obvious institutional interest in the outcome. **The government is pursuing criminal charges in a parallel proceeding in Missouri**. It obtained a Temporary Restraining Order freezing the defendants' assets. A civil receiver appointed by the Texas court—operating as an officer of that court and a fiduciary for the victims—would necessarily interact with the criminal proceedings and the Missouri TRO." *Id.* at 15.<br>• "Here, by contrast, the government used ex parte procedures to oppose **emergency relief sought by fraud victims**." *Id.* at 18–19.<br>• "If this procedural irregularity is permitted to stand, it will provide a roadmap for the government to manipulate civil litigation whenever parallel criminal proceedings exist. Any time the government pursues criminal charges, it could intervene informally in related civil cases, argue publicly against relief sought |

12

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | by victims or defendants, and supplement those public arguments with secret submissions justified by vague invocations of 'ongoing investigations.'" *Id.* at 22.<br><br>• "The Reply Brief noted that only the debtor can file voluntary bankruptcy under 11 U.S.C. § 301, and that waiting indefinitely for **confessed fraudsters** to voluntarily file is no remedy at all." *Id.* at 20.<br><br>• "**This federal class action involves approximately 10,000 victims of a healthcare fraud scheme operated by defendant Health Matching Account Services, Inc.** ('HMA'). *Id.* at 24.<br><br>• "HMA's CEO **Elliott Gorog admitted in text messages that he operated 'my Ponzi scheme,' bragging about 'pocket[ing] the savings' and instructing employees to 'stiff the hospital**.'" *Id.*<br><br>• "Former employee Holly Shelton admitted that **HMA's promised matching funds 'technically doesn't exist' and were merely 'phantom numbers**.'" *Id.*<br><br>• "**The fraud diverted approximately $37 million** from customer accounts." *Id.*<br><br>• "**The comprehensive memorandum established . . . probability of fraudulent conduct . . . .**" *Id.* at 25.<br><br>• The *Pope* plaintiffs "filed a Supplemental Memorandum addressing how **the Missouri TRO necessitated, rather than precluded, appointment of a receiver**." *Id.*<br><br>• "The memorandum explained that: . . . established coordination mechanisms allow parallel proceedings" *Id.* at 25–26.<br><br>• The *Pope* plaintiffs "filed a comprehensive Reply Brief," which "demonstrated that . . . **the Petters case provides a proven blueprint for parallel** |

13

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | criminal and civil proceedings [and] **all Santibanez factors are overwhelmingly satisfied** . . . ." *Id.* at 27.<br><br>• "The Reply Brief . . . demolished the bankruptcy argument, noting that only HMA can initiate voluntary proceedings under 11 U.S.C. § 301, and waiting for voluntary bankruptcy by **confessed fraudsters** is no remedy at all." *Id.* at 30.<br><br>• "Most critically, **the Reply Brief . . . cited *Petters* extensively—a proven blueprint where a criminal § 1345 freeze (identical to the Missouri TRO here) and a civil equity receivership operated successfully in parallel**." *Id.* at 31.<br><br>• "Petitioners sought emergency relief to process medical claims, preserve digital infrastructure, and **prevent ongoing fraud**." *Id.* at 39.<br><br>• "If the government can use its criminal investigation as justification for supplementing public briefing with ex parte submissions in parallel civil litigation, defendants and affected third parties will be systematically denied due process whenever parallel criminal proceedings exist." *Id.* at 44.<br><br>• "Time-sensitive relief for **10,000 fraud victims** cannot await final judgment." *Id.* at 47.<br><br>• "Waiting indefinitely for **confessed fraudsters** to voluntarily file bankruptcy is not a remedy—it is an abdication of equity's protective function." *Id.* at 49.<br><br>• "[T]he government's own Missouri TRO demonstrates why passive restraints are inadequate and active receivership is necessary. The TRO freezes assets but provides no mechanism for: **tracing the $37 million in diverted funds**; **pursuing fraudulent transfer litigation**; processing emergency medical claims; preserving degrading digital infrastructure; or reconstructing accurate account records. **What victims need is a neutral fiduciary actively working to recover stolen funds and provide relief**." *Id.* at 49–50. |

14

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "[T]he district court never explained why the proven Petters model would not work here. **The factual parallels are overwhelming: both involve confessed Ponzi schemes**, § 1345 freezes, missing victim funds requiring tracing, and the need for civil recovery mechanisms. The district court's order makes no mention of Petters whatsoever, despite Petitioners devoting substantial briefing to it as the answer to coordination concerns." *Id.* at 52.<br><br>• Beyond the district court's two stated reasons, the comprehensive briefing below established all six Santibanez factors overwhelmingly support receivership: (1) valid claims supported by **CEO's written admission to operating 'my Ponzi scheme'**; (2) **admitted fraudulent conduct**; (3) imminent danger with **$37 million already diverted** and ongoing dissipation; (4) inadequacy of legal remedies where money damages cannot trace **stolen funds**, preserve digital infrastructure, or process emergency medical claims; (5) absence of less drastic alternatives where voluntary bankruptcy is illusory and the Missouri TRO merely freezes assets without providing victim relief or recovery mechanisms; and (6) overwhelming net benefit where **protecting 10,000 fraud victims vastly outweighs any burden on a confessed fraudster**." *Id.* at 52–53.<br><br>• "Recent Fifth Circuit authority in *SEC v. Timothy Barton*, **No. 24-10004 (5th Cir. Apr. 17, 2025), directly mandates receivership under these circumstances, holding district courts must appoint receivers when clear necessity exists due to ongoing fraud**, less drastic remedies like asset freezes are inadequate, and benefits substantially outweigh costs." *Id.* at 53. |
| 11/13/2025 | Dkt. 83 | • "Plaintiffs uncovered devastating evidence that HMAS's principal, **Elliot Gorog, admitted to operating a 'Ponzi scheme' and bragging about throwing 'at least 30 claims in the trash**.'" Dkt. 83 at 4.<br><br>• "**10,000 defrauded victims** are waiting for relief . . . ." *Id.* |

| Date | *Pope* Docket Number | Substance of Fraud–Based Allegation |
|---|---|---|
| | | • "Approximately **10,000 consumers have been defrauded** of their healthcare savings. . . . The public interest in protecting **defrauded consumers** . . . ." *Id.* at 6.<br><br>• "**10,000 defrauded victims** are waiting for relief . . . ." *Id.* at 7. |
| 11/13/2025 | Dkt. 84 | • "**On December 6, 2024: the FBI was informed that Plaintiff sought to appoint a receiver once evidence confirming the fraud was obtained** including the name of a potential receiver and counsel for a receiver." Dkt. 84 at 6.<br><br>• "The government here seeks to protect its prosecutorial prerogatives and investigation . . . rather than a direct stake in the civil claims for breach of contract and **fraud damages being pursued by the class members**." *Id.* at 8.<br><br>• "**[T]his action is the civil claims brought by the class members for** breach of contract and **fraud damages**." *Id.* at 9.<br><br>• The "government . . . was permitted to advocate against the receiver while **plaintiffs, representing defrauded victims** . . . ." *Id.* at 11. |